Electronically Filed
Supreme Court
SCOT-17-0000184
10-DEC-2018
01:32 PM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

---

IN THE MATTER OF THE CONTESTED CASE HEARING ON THE WATER USE PERMIT APPLICATION ORIGINALLY FILED BY KUKUI (MOLOKAI), INC., NOW REFILED AS A NEW GROUND USE BY MOLOKAI PUBLIC UTILITIES, LLC.

---

SCOT-17-0000184

APPEAL FROM THE COMMISSION ON WATER RESOURCE MANAGEMENT
(CASE NO. CHH-MO-97-01)

DECEMBER 10, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, JJ., AND CIRCUIT JUDGE GARIBALDI, IN PLACE OF WILSON, J., RECUSED

OPINION OF THE COURT BY POLLACK, J.

When this court first considered this case over a decade ago, we vacated the issuance of two water use permits and remanded the matter to the State of Hawai'i Commission on Water Resource Management (Commission) for further proceedings. On remand, parties indicating that they were the applicant's successors in interest submitted a letter to the Commission stating that they lacked the financial resources to continue to pursue the case. When these same parties filed a new water use

application years later, the Commission initially treated it as a continuation of the remanded case before concluding that the letter had constituted a waiver of the applicants' right to continue the original proceedings.  The applicants now challenge this conclusion, arguing that the letter was at best ambiguous as to their intention to relinquish the rights at issue. Because we hold that the Commission did not err in finding that the letter was a clear and unambiguous waiver of the right to proceed on the contested case, we affirm.

## I.    FACTS AND PROCEDURAL HISTORY

### A.    In Re Kukui (Molokai), Inc.

On May 13, 1992, the Commission designated Moloka'i as a water management area.[1]  The designation took effect on July 15, 1992, thereby triggering a one-year period during which all existing users of water from the area's aquifers were required to submit applications for existing water use permits, which if granted would entitle the permittee to continue utilizing the approved amount of water.  See HRS § 174C-50(c) (1993). Approximately a year later, on June 8, 1993, the Commission accepted a joint existing water use permit application submitted

---

[1]     Hawaii Revised Statutes (HRS) § 174C-41(a) (1987) provides that the Commission shall designate areas "threatened by existing or proposed withdrawals" as water management areas "to ensure reasonable-beneficial use of the water resources in the public interest."

by Moloka'i Irrigation System and Moloka'i Ranch that sought to pump water from Well No. 0901-01 (Well 17).[2]  In 1993, however, ownership of the land overlying Well 17 was transferred to Kukui (Moloka'i), Inc. (Kukui).[3]

In light of this transfer, Kukui submitted its own existing use application on December 15, 1993, seeking to divert 2 million gallons of water a day (gpd) from Well 17.  Although the statutory one-year period for submitting existing use applications had expired, the Commission treated Kukui's application as timely, considering it an amendment to the existing use application submitted by Moloka'i Irrigation System and Moloka'i Ranch rather than as a new application.

After several revisions, the Commission responded to Kukui's application on March 14, 1995, by authorizing an interim use permit of 871,420 gpd and deferring final action until all existing uses could be established.  Approximately a year later, the Commission reviewed a staff recommendation to amend the interim permit to increase Kukui's allowable withdrawal to 1.169 million gpd.  The Commission rejected the recommendation and reaffirmed the March 14, 1995 interim existing use allocation of

---

[2]     Well 17 draws water from the Kualapu'u Aquifer on the island of Moloka'i.

[3]     At the time, Kukui was the owner of Kaluako'i Resort.

871,420 gpd.  Kukui requested a contested case hearing challenging this decision.

Prior to commencement of the contested case hearing, the Department of Hawaiian Home Lands (DHHL), the Office of Hawaiian Affairs (OHA), and individuals Sarah Sykes, Judy Caparida, and Georgina Kuahuia were granted permission to intervene.  The hearing was held over the course of eight days beginning on November 23, 1998.  The Commission issued its final "Findings of Fact, Conclusions of Law, and Decision and Order" on December 19, 2001 (2001 Order), awarding Kukui an existing use permit authorizing the withdrawal of 936,000 gpd and a proposed new use permit authorizing the withdrawal of an additional 82,000 gpd.

DHHL, OHA, Caparida, and Kuahuia (collectively, the Intervenors) appealed from the 2001 Order.  During the pendency of the appeal, Kaluakoi Land LLC (Kaluakoi Land), a wholly-owned subsidiary of Molokai Properties Limited (Molokai Properties), acquired the assets of Kukui and was substituted as a party for Kukui.

On appeal, this court held that, because Kukui's request for an existing use permit should have been treated as a new existing use application rather than an amendment to the original application, it was untimely, thus rendering the existing use permit void.  In the Matter of the Contested Case

Hearing on the Water Use Permit Application Filed by Kukui (Molokai), Inc., 116 Hawai'i 481, 501, 174 P.3d 320, 340 (2007) (hereafter In Re Kukui (Molokai), Inc.). Accordingly, the existing water uses at issue were "presumed abandoned," we concluded, and Kaluakoi Land was required to apply for a new use permit under HRS § 174C-51 if it sought to "'revive' these expired uses."[4] Id. This court further held that the Commission had erred in granting Kukui the additional proposed new use permit because the Commission had, inter alia, failed to apply the requisite level of scrutiny and impermissibly shifted the burden of demonstrating that the use would interfere with constitutional public trust purposes onto the intervenors. Id. at 506-08, 174 P.3d at 345-47. We therefore vacated the Commission's 2001 Order and remanded the case for further proceedings consistent with the opinion.

### B.    Remand Before the Commission

On remand, the Commission issued a "Minute Order Setting Status Conference" on February 25, 2008, to which Kaluakoi Land did not respond.[5] In its place, Molokai Properties

---

[4]    This portion of the In Re Kukui (Molokai), Inc. opinion makes reference to Kukui instead of its successor in interest, Kaluakoi Land. See 116 Hawai'i at 501, 174 P.3d at 340.

[5]    Although the parties refer to the "Minute Order Setting Status Conference" numerous times in their subsequent filings, the February 25 Minute Order itself is absent from the record.

filed a joint Status Conference Statement with its wholly-owned subsidiaries Kaluakoi Water LLC (Kaluakoi Water)[6] and Molokai Public Utilities, Inc. (MPU).[7]  The Intervenors also filed a Joint Status Conference Statement.  The Commission held the status conference on March 3, 2008, to discuss the hearing on remand.  On March 10, 2008, the Commission directed the Intervenors to submit "memoranda regarding their respective position[s] on the scope of the hearing on remand" by May 2, 2008.  In addition, the Commission directed MPU, Molokai Properties, and Kaluakoi Water to (1) file a separate pleading identifying Kukui's successor-in-interest that would be the applicant on the amended permit application[8] and (2) respond to the Intervenors' memoranda regarding the scope of the hearing by June 16, 2008.

On March 24, 2008, however, Molokai Properties announced its intention to shut down operations via a press release and an internal memorandum circulated to its employees. When the Intervenors submitted a joint "Memorandum Regarding

---

[6] Kaluakoi Water is a wholly-owned subsidiary of Kaluakoi Land, which as stated is itself a wholly-owned subsidiary of Molokai Properties.

[7] MPU is a licensed public utility and wholly owned subsidiary of Kaluakoi Water that provides water in the Kaluakoʻi area of West Molokaʻi.

[8] Although the Commission refers to the "amended permit application," this court expressly required the former applicant to submit a new application on remand if it sought to revive expired uses.  In Re Kukui (Molokai), Inc., 116 Hawaiʻi at 501, 174 P.3d at 340.

Scope of Hearing on Remand" on May 2, 2008, it was accompanied by a "Joint Motion to Dismiss in Part Moloka'i Properties, Limited's Application for Water Use Permit" (Motion to Dismiss) which sought to dismiss the application based on Molokai Properties' upcoming cessation of operations. Neither Molokai Properties, MPU, nor Kaluakoi Water filed any response to the Intervenors' memorandum or to the Motion to Dismiss.

On May 27, 2008, Molokai Properties informed the Commission by letter that MPU "[did] not intend to continue to pursue this case on remand" (May 27 letter). Molokai Properties disclosed that it had been operating MPU at a loss for years and was shutting down its operations due to insolvency. The letter stated in relevant part as follows:

> This letter is to inform you that Molokai Public Utilities (MPU) does not intend to continue to pursue this case on remand. As has been discussed with staff and the [Public Utilities Commission], MPU has been operating at a significant loss for several years and is essentially insolvent.
>
> . . . .
>
> As a result of this insolvency, we do not have the resources to pursue this very expensive remand proceeding. . . . We are actively seeking a new owner for MPU that will have the resources to continue operation and hopefully, they will be capable of resolving this matter. However, as previously stated, we cannot actively pursue this matter before the Commission.

In a second letter dated May 30, 2008 (May 30 letter), Molokai Properties informed the Public Utilities Commission (PUC) that MPU would cease providing water utilities to West

Moloka'i by the end of August 2008. MPU further stated that it did not have the funds to make a reapplication for a permit to operate Well 17 and that there would "probably" be an unavoidable termination of service to customers unless another entity was located to take over operations.

In response, the PUC ordered a temporary rate increase to enable MPU to continue operating until it transferred its Certification of Public Convenience and Necessity to another entity.[9] Additionally, the Director of Health issued an order on July 21, 2008, requiring Molokai Properties and MPU to continue to provide drinking water and wastewater systems for ninety days to prevent "imminent peril to the public health and safety." Molokai Properties and its subsidiaries continued to operate and utilize water from Well 17 without a water use permit for several years.

### C. MPU's New Application

In December 2012, MPU filed an application for a new ground water use permit (MPU's application) seeking to withdraw 1,026,518 gpd from Well 17.[10] The Commission worked with MPU over the next few years to assist it in completing the

---

[9] The Certification of Public Convenience and Necessity essentially gave MPU an exclusive right to operate water utilities in specific regions on Moloka'i and charge rates approved by the PUC.

[10] The application itself is absent from the record.

application, formally accepting the completed application on October 12, 2015. The application was not served upon the other parties to the 1997 contested case.

On October 20, 2015, the Commission informed DHHL by letter that it, MPU, and the Maui Department of Water Supply (MDWS) all had pending ground water use permit applications that were potentially competing for water access, and the Commission therefore intended to consolidate the applications and incorporate them into the original contested case proceeding that had continued after this court's remand in In Re Kukui (Molokai), Inc. On October 23 and 30, 2015, the Commission published a notice inviting affected persons to object or comment on MPU's application, stating that "[t]his case will continue as a contested case hearing, and parties previously involved in the contested case hearing culminati[ng] in the December 19, 2001 Decision & Order shall respond in writing of their intention to continue in the case or to withdraw." On October 30, 2015, the Commission issued a minute order in the original contested case docket setting a status conference for November 9, 2015, which was served upon MPU, Kaluakoi Land, the Intervenors, and MDWS.

Thereafter, at a hearing held on February 16, 2016, testimony was presented regarding the propriety of handling MPU's application as part of the original contested case rather

than as a distinct new matter.  On March 7, 2016, the Commission issued a minute order stating that the parties would be permitted to submit briefs and present oral arguments to address whether, pursuant to this court's order remanding the case for further proceedings and in light of In Re Wai‘ola O Moloka‘i, 103 Hawai‘i 401, 83 P.3d 664 (2004), the original contested case hearing should continue or be dismissed.  Briefs were filed by MPU, the Intervenors, and MDWS, and the Commission heard oral argument on April 19, 2016.

Before the Commission, the Intervenors and MDWS argued that the Commission should formally deny the outstanding two-decade-old Kukui application, officially dismiss the 1997 contested case, and treat MPU's 2014 application as a new, separate application.  The Intervenors and MDWS contended that MPU waived any interest it had in the 1997 proceedings through its May 27 letter.[11]

---

[11]    Though making substantially the same argument, DHHL and OHA characterize MPU's letter as an abandonment rather than a waiver. Additionally, Caparida and Kuahuia argued that, because Molokai Properties and its subsidiaries did not respond to the Commission's directive to file pleadings identifying Kukui and Kaluakoi Land's successor in interest, they were never formally substituted for the original applicant, and therefore MPU had no recognized interest in the 2007 proceeding to waive.  At oral argument in this case, however, Caparida and Kuahuia acknowledged that MPU had the "technical right" to seek review of the Commission's dismissal order. Oral Argument at 47:08, In the Matter of the Contested Case Hearing on the Water Use Permit Application Originally Filed by Kukui (Molokai), Inc., Now Refiled as a New Ground Use by Molokai Public Utilities, LLC. (No. SCOT-17-0000184), http://oaoa.hawaii.gov/jud/oa/18/SCOA_053118_SCOT_17_184.mp3.  Therefore this issue will not be further addressed.

The Intervenors and MDWS also asserted that the facts and circumstances surrounding Kukui's 1993 application had significantly changed, especially in light of the two competing water use applications that were now under consideration, and the Commission's findings in the case were accordingly outdated and no longer relevant to MPU's application. Further, they contended, considering MPU's application for the new ground use water permit within the context of the original contested case hearing would deprive the public and other interested parties of the opportunity to meaningfully participate in the hearing, and relying on the Commission's 2001 Order would violate the basic elements of procedural due process by improperly and prejudicially binding the new parties to an old record that they did not participate in developing.

They additionally argued that the holding in In Re Kukui (Molokai), Inc. had settled all issues regarding Kukui's 1993 permit application and thus rendered the original contested case moot. And, they concluded, the Commission's and MPU's conduct in relation to the application--which included a failure to serve the application on the other parties to the 1997 contested case hearing and an initial refusal to allow the other parties access to relevant filings upon request--indicated that MPU's application was an entirely new and separate matter from the 1997 contested case.

In response, MPU contended that it was a valid party to the case as the successor to Kaluakoi Land and that it had complied with this court's order directing that a new application be filed under HRS § 174C-51 on remand. MPU further asserted that it did not abandon its right to participate in the contested case because the May 27 letter represented MPU's hope to pursue the matter in the future when it had the funds. MPU argued that the elapsed time since the commencement of the contested case was not unreasonable because it "was spent in administrative and judicial review of the requested water uses" and, in any event, the case could not be dismissed on this ground alone.

MPU further argued that the Commission lacked the discretion to dismiss the contested case in light of the court's order to vacate and remand in In Re Kukui (Molokai), Inc. The supreme court stated that the case should continue, MPU argued, and the parties should not have to re-prove findings of fact that were not disturbed in that appeal.

Finally, MPU emphasized that introducing new parties and evidence on remand for a contested case is not impractical or unworkable but rather quite common. MPU claimed that this practice would not deprive any party of the opportunity to participate in the matter and introduce new evidence because the Commission's Public Notice expressly requested that "[n]ew

12

parties wishing to intervene should file their objections."[12] Therefore, MPU stated, the parties' participation would not be limited if the case were continued.  Even if binding the new parties to the original record was problematic, MPU contended, the continuation of the contested case and the consolidation of the applications were separate issues, and the case could be continued without the addition of the other parties.

D.    **The Commission's Order Dismissing the Contested Case**

On February 17, 2017, the Commission issued an Order Dismissing the Contested Case.  The Commission found that "MPU waived its right to continue this contested case when it submitted the May 27, 2008 letter to the Commission that clearly stated that it did not intend to pursue the case on remand." MPU's subsequent communications supported this interpretation of the letter, the Commission stated, citing as an example the May 30 letter to the PUC that notified the State of Hawaiʻi, County of Maui, and all MPU customers of Molokai Properties' intent to cease operating MPU in August 2008.  The Commission stated that it was "not reasonable for MPU to believe that it can undo its

---

[12]    In its initial brief, MPU made three additional arguments arguing against dismissal.  MPU argued that dismissal would: (1) result in piecemeal appeals; (2) be inconsistent with the Commission's actions, including notifying the parties and the public that the contested case hearing was continuing; and (3) be inconsistent with the Commission's actions in other similar contested case hearings.  However, none of these arguments are presented on appeal and are therefore not furthered addressed.

clear expression that it did not want to pursue the contested case by filing a new use water permit application four years later." Responding to MPU's argument that the outstanding applications involved issues that had either been resolved in the 1997 contested case or remanded in In Re Kukui (Molokai), Inc., the Commission encouraged the parties to stipulate to uncontroverted facts in future proceedings when possible and stated that it would follow this court's guidance in any future decision making.

MPU filed a timely appeal directly to this court pursuant to HRS § 174C-60 (2011).

## II. ARGUMENTS ON APPEAL

On appeal, MPU challenges the Commission's findings on the basis that, whether express or implied, a waiver of rights must be clear and unambiguous. The May 27 letter was "at best" equivocal, MPU argues, and it thus cannot constitute a waiver.

MPU contends that the May 27 letter merely stated "that the current owner [of MPU] would not actively pursue the matter and [] the future owner may," which left an "'opportunity for a reasonable inference' that MPU did not intend to waive its right to continue with the contested case." Rather, MPU asserts, the language of the May 27 letter is best understood as a request for a stay of proceedings, which "is effectively what

14

happened."[13]  This interpretation is supported by its continued

operations after the May 27 letter pursuant to the Department of

Health order, MPU argues, as well as its submission of a new

water use permit application, which together indicate that the

letter was not expressing an intent to abandon the matters at

issue in the contested case.  Similarly, MPU notes that after

receiving the May 27 letter, the Commission did not dismiss the

original contested case but rather kept the case on its docket

and processed the new application under the same case number.

MPU concludes that these acts, collectively, demonstrate that

the May 27 letter was ambiguous and therefore did not constitute

a waiver.

MPU also contends that it will suffer prejudice as a

result of the Commission's dismissal of the contested case.  MPU

argues that the record developed in the 2001 "Findings of Fact"

was not disturbed in the previous appeal because this court

vacated the 2001 Decision and Order only "to the extent it

grant[ed] [MPU] a permit for existing uses."[14]  (Quoting In Re

---

[13]  Although this argument appears to have been raised for the first time in MPU's reply brief, we do not find it necessary to determine whether the issue of a stay was properly preserved given our disposition of the case. See Hawai'i Rules of Appellate Procedure Rule 28(b)(4).

[14]  In In Re Kukui (Molokai), Inc., this court expressly stated that "we [also] vacate the Commission's Decision and Order to the extent that it grants KMI a permit for proposed uses."  116 Hawai'i at 506, 174 P.3d at 345 (emphasis added).

Kukui (Molokai), Inc., 116 Hawaiʻi at 501, 174 P.3d at 340.)
"MPU should not be forced to relitigate facts and issues" that
are essential to its new use application, it argues.

In response, the Intervenors and MDWS reiterate their
arguments before the Commission. Additionally, Caparida and
Kuahuia argue that, even assuming the Commission erred in
finding a waiver, the Commission still acted within its
discretion because, inter alia, the new use permit and the
contested case should be adjudicated under different standards
and the Commission's findings under the contested case,
including MPU's water usage, are outdated.

MPU replies that this court's order in In Re Kukui
(Molokai), Inc. clearly contemplated that the contested case
would continue notwithstanding the need to evaluate the
application under a different standard. MPU further argues that
the Commission's findings remain relevant despite the passage of
time and points out the Commission did not state that it was
exercising its discretion to control its docket when it
dismissed the contested case. This alternative reasoning
therefore cannot now justify affirming the decision on appeal,
MPU concludes.

16

## III.    STANDARDS OF REVIEW

The issue of whether a waiver exists is "generally a question of fact."[15]  Coon v. City & Cty. of Honolulu, 98 Hawai‘i 233, 261-62, 47 P.3d 348, 376-77 (2002) (citing Hawaiian Homes Comm'n v. Bush, 43 Haw. 281, 286 (Haw. Terr. 1959)).  Findings of fact are reviewable under the clearly erroneous standard. Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan, 87 Hawai‘i 217, 229, 953 P.2d 1315, 1327 (1998) (citation omitted); Bragg v. State Farm Mut. Auto. Ins. Co., 81 Hawai‘i 302, 304-05, 916 P.2d 1203, 1205-06 (1996).  The court will vacate findings under the clearly erroneous standard "if [the] court is left with the definite and firm conviction that a mistake has been made."  DeFries v. Ass'n of Owners, 999 Wilder, 57 Haw. 296, 302-03, 555 P.2d 855, 859 (1976) (citation omitted).

"[W]hen the facts [underlying a waiver] are undisputed it may become a question of law." Coon, 98 Hawai‘i at 262, 47 P.3d at 377 (quoting Bush, 43 Haw. at 286).  "Questions of law are reviewable de novo under the right/wrong standard of review."  Bank of Hawaii v. DeYoung, 92 Hawai‘i 347, 351, 992

---

[15]    MPU contends that a waiver must be unambiguous and, relying on several cases concerning the interpretation of contracts, argues that whether a document like the May 27 letter is ambiguous is a question of law that is reviewable de novo.  (Citing, inter alia, Gustafson v. Fukino, Civil No. 09-00565 SOM/KSC, 2010 WL 2900434, at *2 (D. Haw. Jul. 20, 2010).)  Whether a contract between private parties is ambiguous is a different question than whether a party has waived a procedural right in an agency adjudication, however, and we find these cases inapposite.

P.2d 42, 46 (2000) (quoting <u>Ditto v. McCurdy</u>, 90 Hawai'i 345, 351, 978 P.2d 783, 789 (1999)).

## IV. DISCUSSION

### A. The Commission Did Not Err in Finding MPU Expressly Waived its Right to Proceed With the Contested Case By its May 27 Letter.

MPU challenges the Commission's conclusion in its Order Dismissing the Contested Case that "MPU waived its right to continue this contested case when it submitted the May 27, 2008 letter to the Commission that clearly stated it did not intend to pursue this case on remand." As we have long held, a waiver is either "a voluntary and intentional relinquishment of a known right[] or such conduct as warrants an inference of the relinquishment of such right." <u>Hewahewa v. Lalakea</u>, 35 Haw. 213, 218 (Haw. Terr. 1939) (internal quotations and alterations omitted). This to say that, although a waiver must be knowing and intentional, it "may be expressed or implied," meaning "it may be established by express statement or agreement, or by acts and conduct from which an intention to waive may be reasonably inferred." <u>Coon v. City & Cty. of Honolulu</u>, 98 Hawai'i 233, 261, 47 P.3d 348, 376 (2002) (citations and internal quotation marks omitted).

By stating in its order that MPU's May 27 letter "clearly stated it did not intend to pursue this case on remand," the Commission indicated that it had found an express

18

waiver of MPU's right to continue the contested case. We therefore consider whether MPU's May 27 letter constituted a waiver through an "express statement or agreement." Id. at 261, 47 P.3d at 376 (citations omitted).

MPU's May 27 letter began by stating, "This letter is to inform you that Molokai Public Utilities (MPU) does not intend to continue to pursue this case on remand." This statement clearly reflects MPU's knowledge of its right to pursue the case on remand, and it unambiguously indicates MPU's intention to relinquish that right, thus satisfying the key elements of a waiver.[16] See Coon, 98 Hawai'i at 261-62, 47 P.3d at 376-77 ("[W]aiver is defined as an intentional relinquishment of a known right . . . . To constitute a waiver . . . the waiving party must have had knowledge, actual or constructive, of the existence of such a right at the time of the purported

---

[16]    As discussed supra, note 15, MPU relies primarily on cases from other jurisdictions interpreting parties' contractual obligations to argue that a waiver must be unambiguous and unequivocal. (Citing, inter alia, Office of the Att'y Gen. v. Tennessee Regulatory Auth., No. M2003-01363-CAO-R12-CV, 2005 WL 3193684, at *12 (Tenn. Ct. App. Nov. 29, 2005); In re Nw. Liquor Indus., Inc., 107 B.R. 616, 619 (Bankr. W.D. Wis. 1988); Meyer v. Mack Motor Trucks, Inc., 141 So.2d 427, 429 (La. Ct. App. 1962).) We have indeed often held that a party's relinquishment of constitutional rights must be clear and unmistakable. See, e.g., State v. Deming, 137 Hawai'i 18, 364 P.3d 535 (2015) (right to counsel); Lii v. Sida of Hawaii, Inc., 53 Haw. 353, 355, 493 P.2d 1032, 1034 (1972) (right to trial by jury). Thus far, however, we have not applied the same high standard to the waiver of what appears to be a purely procedural right in an administrative adjudication. Because we find that in any event MPU unambiguously and unequivocally communicated a waiver of its right to proceed with the contested case, we need not now decide whether the high standard we have articulated in other contexts would otherwise apply in this setting.

waiver."). This court need not speculate as to MPU's genuine intention because MPU expressed its intent by using the word "intend." Thus, MPU's statement that it did not intend to "continue to pursue this case" is a clear representation that MPU would no longer continue to pursue a new use permit to revive expired uses through the remanded case.

Other statements made in the May 27 letter underscore MPU's intent to relinquish its right to the contested case proceeding. The letter stated that "we do not have the resources to pursue this very expensive remand proceeding" and "we cannot actively pursue this matter before the Commission." The language "we do not have the resources" and "we cannot actively pursue" unequivocally expresses that MPU could not and would not pursue the case on remand.

MPU contends that its statement that, "We are actively seeking a new owner for MPU that will have the resources to continue operation and hopefully, they will be capable of resolving this matter," indicates that although Molokai Properties, as the current owner, would not pursue the matter, a future owner might resume the contested case at a later date. While MPU points to the stated efforts to find a new owner that would have had the resources to continue operations, even that speculation is couched as a "hope" that if a new owner was found, that owner would "be capable of resolving the matter."

20

Moreover, the next sentence of the letter emphasizes that, "However, as previously stated, we cannot actively pursue this matter before the Commission." Thus, the May 27 letter unequivocally stated that MPU did not intend to go forward with the contested case, which constitutes an express waiver of MPU's right to proceed with the contested case.

Not surprisingly, the Commission reached the same conclusion in its Order Dismissing the Contested Case. The Commission determined that "MPU waived its right to continue this contested case when it submitted the May 27, 2008 letter to the Commission that clearly stated that it did not intend to pursue this case on remand." The Commission found that "the wording of the letter itself . . . supports the interpretation that MPU had no intent to continue to provide water service on Molokai and . . . was waiving its request for a contested case on remand." Further, the Commission found that MPU's statement that it was looking for a new owner "does not indicate that the contested case would continue to be pursued," which was confirmed by the May 27 letter's reiteration that "as previously stated, [MPU] cannot pursue this matter before the Commission."

The Commission duly considered the May 27 letter that it had received regarding MPU's intentions and determined that MPU had expressly relinquished its right to continue with the contested case. Therefore, the Commission's finding of a waiver

of MPU's right to continue the contested case was not clearly erroneous or wrong as the letter unequivocally stated that it did "not intend to continue to pursue this case on remand."[17]

### B. The May 27 Letter Was Not a Request for a Stay.

MPU belatedly asserts in its reply brief to this court that the May 27 letter was an inartful request for a stay of proceedings.[18]  A "stay" is defined as "1. The postponement or halting of a proceeding . . . . [or] 2. An order to suspend all or part of a judicial proceeding . . . ."  Black's Law Dictionary 1639 (10th ed. 2014).

Despite MPU's contention, the May 27 letter does not contain any indicia of a request for a stay.  As an initial matter, the May 27 letter does not contain a statement that

---

[17]     Even if the statements in MPU's May 27 letter had been insufficient to constitute a waiver in their own right, an implied waiver may be made "by acts and conduct from which an intention to waive may be reasonably inferred."  Coon, 98 Hawai'i at 261, 47 P.3d at 376 (citations omitted).  At the time that MPU sent the May 27 letter, MPU was still under an obligation to reply to the Intervenors' motion to dismiss by June 16, 2008, and to comply with the Commission's minute order directing it to file a separate pleading identifying Kukui's successor-in-interest.  MPU never made either filing.  A reasonable inference stemming from this inaction is that after MPU notified the Commission that it "[did] not intend to continue to pursue this case on remand," MPU no longer felt obligated to participate in the proceedings by responding to the Intervenors' memoranda or complying with the Commission's Minute Order of March 10, 2008.  Thus, as a permit applicant that could choose to reapply at any time, MPU's intent to waive its right to pursue the case on remand "may be reasonably inferred" by these cumulative actions, which would accordingly constitute an implied waiver.  Id.

[18]     MPU also relied significantly on this characterization of the letter during oral argument before this court.  See Oral Argument at 13:10-14:40, In the Matter of the Contested Case Hearing on the Water Use Permit Application Originally Filed by Kukui (Molokai), Inc., Now Refiled as a New Ground Use by Molokai Public Utilities, LLC. (No. SCOT-17-0000184), http://oaoa.hawaii.gov/jud/oa/18/SCOA_053118_SCOT_17_184.mp3.

could be understood as a "request."  A "request" is "[a] motion by which a member invokes a right, seeks permission for the exercise of a privilege, or asks a question."  Black's Law Dictionary 1497 (10th ed. 2014).  The May 27 letter neither attempts to invoke a right, seek permission, nor ask a question.  Rather the letter's purpose is "to inform" the Commission of its intent not to pursue the case on remand.  As discussed supra, this language is consistent with an express statement that MPU could not and would not proceed on remand.

Additionally, the May 27 letter does not satisfy the procedural requirements for motions set forth by the Commission under Hawaii Administrative Rules (HAR) § 13-167-58(a).  Pursuant to HAR § 13-167-58(a), "All motions other than those made during a hearing shall be made in writing to the commission, shall state the relief sought, and shall be accompanied by an affidavit or memorandum setting forth the grounds upon which they are based."  Here, the May 27 letter does not state the relief sought--which would presumably be a stay if it were intended as MPU now claims.  Similarly, the May 27 letter is unaccompanied by, and fails to state, grounds for the purported request for a stay.  And, merely disclosing financial difficulties and the "hope" that a successor in interest will be able resolve the matter is insufficient to constitute either a request for a stay or grounds in support thereof.  Furthermore,

assuming without deciding that the Commission has the authority to grant an indefinite stay of the type MPU appears to contemplate, the record does not demonstrate that the Commission treated the May 27 letter as a request for a stay or that it ruled on such a request. Thus, we hold that the May 27 letter was not a request for a stay and that no stay was considered or granted in the contested case.

## V. CONCLUSION

Based on the foregoing, the Commission's finding that MPU waived its right to continue the contested case was not clearly erroneous or wrong and therefore we affirm the circuit court's Order Dismissing the Contested Case.

Calvert G. Chipchase
Christopher T. Goodin
Trisha Akagi
for applicant-appellant

Camille Kalama
David K. Kopper
Sharla Ann Manley
for appellees
Judy Caparida and Georgina
Kuahuia

Ryan Kanaka'ole
Diane K. Taira
Matthew S. Dvonch
for appellee
Department of Hawaiian Home
Lands

Sherry P. Broder
for appellee
Office of Hawaiian Affairs

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Colette Y. Garibaldi



Caleb P. Rowe
Kristin K. Tarnstrom
for appellee
County of Maui,
Department of Water Supply